McAdams v. Robinson and I'm afraid I may butcher this name. Mr. Houchen, did I get that right? That is right, Your Honor. It's Michael Houchen on behalf of the appellant. Great. You may proceed. May it please the Court. This class action settlement presents a classic problem where the settling party has agreed to an overbroad release of the  settlement. This was to the detriment of the class. In the case below, the plaintiff alleged that Nationstar violated the Rule of State Settlement Procedures Act of the Maryland Consumer Protection Act with respect to plaintiffs and the class members' loss mitigation efforts. Loss mitigation is a process by which mortgage servicers allow borrowers to change the terms of their payment obligations in order to avoid foreclosure or delinquency. Prior to the settlement in this action, the District Court ruled on Nationstar's summary judgment motion and the plaintiff's class certification motion. Significantly, the District Court granted summary judgment as to the plaintiff's wrongful foreclosure and dual tracking claims. Dual tracking happens where the mortgage lender falsely leads the borrower to believe that it is processing a borrower's loan modification application instead of going through with the foreclosure process. The District Court ruled that the plaintiff lacked standing to assert these dual tracking claims because, quote, Nationstar had neither started foreclosure proceedings nor moved for foreclosure judgment on the Robinsons home. The District Court further stated, quote, the Robinsons admit they do not have evidence that Nationstar dual tracked them or began the foreclosure proceedings while a loan modification application was pending. And that's in the appendix at pages 108 through 109. Following this ruling from the District Court, it basically allowed Plaintiff Robinson to proceed on just four claims. The District Court did certify a class of all persons in the United States who submitted a loss mitigation application to Nationstar. And did your, did Appellant opt out of the class? No, she did not, Your Honor. Okay, and how does that impact your argument here? I believe in order to have standing to appeal, the objector shouldn't be required to opt out of the class. Instead, the proper procedure is through a written objection, and that's exactly what the Objector McAdams did here. And so, she raised the issues with the District Court below, and that's why we're here today on appeal. So, going back to the District Court's class certification ruling, the District Court expressly denied class certification with respect to the dual tracking claims. And that's at the appendix on page 137. Following the summary judgment order, the parties began to engage in settlement negotiations, and that resulted in the class action settlement that's today. Could I ask you a question? You filed 28J Supplemental 40 from the Southern District of California related to the litigation out there. And as I understand it, in that particular case, at the motion to dismiss stage, Nationstar argued the release barred Ms. McAdams' claims. And the District Court denied the motion to dismiss, and in so doing, essentially ruled that the factual predicate, although there was some overlap between what the Robinsons had pursued in the Maryland litigation and what Ms. McAdams was pursuing under California law in that they both applied for loss and mitigation relief, the fact that Ms. McAdams had these dual tracking and foreclosure claims made them materially different, and he determined that the So doesn't that pretty much undermine your argument that this release on its face was overbroad? Yes, Your Honor. I think that's the correct summary of how the District Court ruled in the Southern District of California litigation. The issue before that court was claim preclusion, and I think the issue before this court is whether the settlement is fair, reasonable, and adequate. And so I think this court needed to take a look at the identical factual predicate test as part of the fairness inquiry for approving a class action settlement. Several courts have held that that's the correct approach, and one of the courts is the Second Circuit, and that's a TBK partner case that's cited in our brief. Can I ask just a quick follow-up? It seems to me that as the reviewing judge, the magistrate had to determine, with respect to overbreadth, is the release sufficiently tailored to the facts that were raised by the representatives, the Robinsons? And in this case, kind of the core is this loss mitigation application process. The second thing that the District Court, in this case the magistrate judge, couldn't do is predict the race judicata effect of the release, even though I believe your co-counsel asked him point whether or not he believed the release would bar the claims in California. That's improper. It's essentially rendering an advisory opinion. So I'm trying to understand where the magistrate judge got off track, given that there's enough factual similarity and he can't predict a race judicata effect. Yes, Your Honor. So I think if you just take a look at the release in the settlement itself, it says that it releases every claim that could have been asserted by the class representative or the class members in connection with the submission of loss mitigation applications during the class period. And so that in connection with language is really important because in order to have dual tracking claims, it necessarily follows that a borrower would have to submit a loss mitigation application. So I think it should have been obvious to the district court that the settlement would preclude claims like the dual tracking claims and the wrongful foreclosure claims. And that's exactly what we brought up at the final approval hearing. So I think other district courts have really Mr. Hopson, can I just follow up on Judge Collins' claim? You say it should have been obvious to the magistrate judge, but a district court judge in California has essentially said that it wasn't obvious by virtue of the fact that it decided to allow your client to proceed with these dual tracking claims in California. That's correct, Your Honor. And I just go back to the release language. I think the magistrate judge in the case below was required to look at the release language in determining whether the settlement is fair, reasonable, and adequate. And several district courts have done such an analysis. One example is the Marshall v. Northrop Grumman case provided in our reply brief. That case kind of involved a similar type of release language, but it's in connection with the claims. The court there denied preliminary approval based on an overbroad release. And page 11 of our reply brief cites additional district court cases where the district court essentially looked at the scope of the release language in determining whether the settlement is fair, reasonable, and adequate. Can I ask a question? So were you prepared at the hearing? I don't think this came up, or if it did, maybe you can correct me. Did you have alternative language that you would have proposed to the magistrate judge with respect to how to limit this agreement? No, Your Honor. During the hearing, we didn't propose any alternative language, and I think that's one thing that's important here is that the settlement must stand or fall based on the terms of the settlement agreement itself. So I don't think the magistrate judge would have been in a position to really write the settlement agreement on behalf of the parties. I think that would have been something that would have been negotiated separately, and they would have needed a revised class action settlement agreement. So despite our concerns with the overbroad release language, the magistrate judge below still found that it was based on an identical factual predicate. We obviously disagree with that because it includes these wrongful foreclosure and dual tracking claims. You know, these claims have value. Under the terms of the settlement, there was something like 48,000 class members who submitted claims. And with the pro rata distribution, it comes out to class members will receive approximately $29. You know, this is woefully inadequate for these types of dual tracking claims and wrongful foreclosure claims. For example, the California Homeowner's Bill of Rights statute that Ms. McAdams is serving in her California case, that statute provides significant statutory damages in the amount of $50,000 for these dual tracking claims if the plaintiff can prove that it's intentional or reckless. So these claims have great value, and I think the scope of the release includes these claims and not just the dual tracking or foreclosure claims, but potentially other claims that could arise under RESPA. And so we think that that in connection with the loss mitigation application language is very problematic here. I'd also like to address the district court's opinion in general approving the settlement as fair, reasonable, and adequate. I think one thing that the district court missed here is really the analysis of the factors that are required by this court under the Lumber Liquidators case and the In re Gippi case. The court cited the factors in its final approval order, but really didn't conduct a thorough analysis of the factors. Really one of the main factors under the Lumber Liquidators case is the solvency of the defendant and the likelihood of recovery on a litigated judgment. The district court really made no findings of what the amount would be to the class of this case were litigated all the way to the final judgment. Mr. Hutchin, can I ask you this? I would agree that perhaps the order on its face was a little thin, but in terms of the judgment, don't we have to consider what the magistrate said at the approval hearing itself, and specifically pages 811 through 818. He went into very specific detail using the factors that he had to consider under Fourth Circuit precedent in terms of substantive adequacy. He noted, and this is huge, that the $3 million settlement fund was three times the statutory capital class actions for RESPA claims. He also went through the history of the litigation, the risks associated with potentially the class would be decertified, among others, that only one out of, what is it, 348,000, 0.003% objected. In other words, that's a long question, but don't we have to look at what he articulated at that hearing in addition to the proposed order that he essentially adopted? Yes, Your Honor. I think it's fair to say that you can consider what the district court said during the final approval hearing. One thing, though, with the... In the final order, at JA 831, the district court incorporated its previous conclusions about the fairness of the settlement and the adequacy and reasonableness of the settlement in its preliminary order. All of that is incorporated into this final order. Yes, I would agree with that also, Your Honor. If you look at the preliminary approval order, it's also kind of scarce in its analysis of the factors. I see I'm kind of running over my time, but I can... You can respond to the two questions that were posed to you. Go ahead. Even during the final approval hearing, the court really didn't analyze one factor that it's supposed to consider under the lumber liquidators case, and that's the likelihood of recovery on a liquidated judgment. The district court did talk about the statutory damages that are available under RESPA, but RESPA also allows for actual damages, and the plaintiffs in this case were alleging $141,000 in interest. I don't know about Judge Cullen, but that answered my question. Thank you, Your Honor. I'll save the remaining amount of my time for this afternoon. Mr. Tyko? It's Tyko, Your Honor, but may it please the court? Sorry about that. No, it's no problem. Everybody does it. My name is Jonathan Tyko, and I represent the plaintiff, and my firm was also appointed as counsel for the class in the court below. I'll start with the release question. The objector and the amicus brief that was filed in this case as well take the position that this settlement is of great concern because it precludes a host of valuable, wrongful discharge claims that could be brought by class members. The problem with that argument is that it's a misinterpretation of the settlement agreement. The settlement agreement simply does not do that. For one thing, the release language of the settlement agreement releases only claims, not defenses, so there's nothing in the settlement agreement that would preclude anybody from defending against a wrongful foreclosure action by claiming that they had been dual-tracked. Most importantly is that the settlement agreement was negotiated to include limiting language in the release. The only claims that are released are those that are in a loss mitigation application, and a loss mitigation application, that is a technical term under the CFPB regulations, and those regulations are not about substantive rights. They're about timing and notices that a servicer has to provide to a homeowner that applies for loss mitigation through a loss mitigation application. Even the dual-tracking provisions of 1024.41 are procedural and primarily about timing. They do not provide any substantive right to receive loss mitigation on behalf of the borrower, and they do not alter the lender's substantive rights under the loan documents. The question of whether or not a claim for damages for violation of the dual-tracking provisions of the regulation is covered by the release was appropriately handled by the magistrate judge who approved the settlement. He clearly took into account the identical factual predicate standard he said in both his oral ruling and in his written ruling that he was aware of that standard and was applying that standard, so he applied appropriately the standard, and he concluded that the language that the parties had negotiated was sufficiently tailored to the facts of the particular case, and how that language would be applied to claims of absent class members was something that he also, I think, correctly and appropriately declined to offer an advisory opinion on, and as we can see from what happened in Ms. McAdams' case against NationStar in California, the courts in those subsequent cases will apply the law correctly as well, and in that case concluded that Ms. McAdams' dual-tracking claims were not covered by the release. Counsel, can I ask a question about the scope of the release and how we're supposed to test it? I mean, it can't be the case that in every situation when an objection is made to a settlement agreement, it comes up on appeal, the answer is, well, we'll look to see how subsequent district courts analyze the settlement, right? Because that can't be right, so what is the appropriate test? I think that really gets to the heart of this question, Judge, and the appropriate test is the identical factual predicate standard, but that standard gets applied both in our case at the approval stage, and it could also be applied in the subsequent cases, but the difference is that in our case at the settlement approval stage, what the judge is being asked to do is to look at the language of the settlement that the parties have negotiated and make a determination about whether that language is appropriately tailored to the facts of the case. They're not being asked to consider all of the theoretical potential claims that other class members might bring in the future. That is what the courts applying the standard in the subsequent cases do. They look at the actual facts of that subsequent case, for example, the McAdams case, and they determine whether or not on those facts that case should be considered to have been released. One of the concerns that Mr. Chauchin raised was the phrase in connection with which he fears is just simply too broad, sweeps in a huge amount, huge number of cases that aren't appropriately part of the settlement, and he cited to a number of district court cases that he referenced in his court ply brief where courts have agreed with him. He says why is this case different? I think most of those decisions, Your Honor, if you look at them, were actually subsequent court decisions. They were not necessarily the court that was considering the fairness of the settlement agreement per se. There will always be the theoretical possibility that a release is going to have some gray areas that are going to have to be resolved in those subsequent cases if the release is asserted by the defendant as a defense in those cases. There's never going to be a perfect one-to-one match. I think what Magistrate Judge Sullivan did in our case was what he is supposed to do, which is to look at the language of the release and say is that language sufficiently tailored? Here, the language that we put in the release was connected to loss mitigation applications. Again, loss mitigation applications, connected is a broad word, but loss mitigation applications is a very narrow word. They do have to be connected to the actual applications, not to other things that a nation star is doing as the servicer of the loan. It has to only be connected to the nation star's handling of the settlement. Now, this is abuse of discretion review. Certainly, in retrospect, perfect hindsight, you could always say, well, you could have written the release differently. That isn't really the question. The question is, did Magistrate Judge Sullivan, was it within his discretion to look at this language that the parties had negotiated and say, in the context of this settlement, this is sufficiently tailored? Can I jump to another argument? I want to give Mr. Houchin a chance to address it as well. Essentially, they make two arguments with respect to the Magistrate Judge presiding at all. There is this threshold jurisdictional argument, 636, Ms. McAdams did not consent. That's not necessarily my concern. It's the second argument that this Magistrate Judge, who was very involved in negotiating, at least the money, I think is how he described it, to bring about this settlement, had essentially a conflict of interest. Two questions on that. One is, as I understand it, that argument was not raised, either in writing or at the Fairness Hearing. I think there potentially is a waiver here. Set that aside. Isn't that a valid concern when you have a Magistrate Judge who is very involved in the negotiations then put on a different hat to approve a settlement when you have this fiduciary obligation to make sure that the unrepresented class members are protected? You're right that that issue was weighed. I would just add to that, there's nothing in the rules or case law that anybody has pointed to that would suggest that what Magistrate Judge Sullivan did was improper or that what Judge Schwong did in delegating the case to Magistrate Judge Sullivan was improper. We would be creating essentially a new rule in a case where the issue was weighed. Having said that, certainly my experience in the trial courts is that judges often play some role in helping the parties towards settlement. I don't see how you would say that a judge who does that has a interest in the settlement. They're not a party to the case. They're not going to benefit from the settlement one way or the other. I think if you created a rule that said any judge that had some involvement in helping the parties negotiate towards a settlement is therefore precluded, that would unnecessarily intrude into the workings of the case quite frequently in my experience. Just one final point on that. I think there's a difference in my limited experience encouraging the parties to go see the Magistrate Judge to undertake negotiations towards a settlement. That's one thing. But to actually be involved in the day-to-day nuts and bolts, and I think one of the concerns is ex parte communications, is something else. I'm not sure and I agree, there's no doctrine on this whatsoever and I don't think they articulated a standard for us in any way, but it is an interesting issue and it's one that gave me pause. Yes, I understand. Would it be okay if I had 30 seconds to just address one issue, Your Honor? Go ahead. This is the question of standing. Particularly in the amicus brief but also in the objector's brief, they make the argument that Mr. Robinson did not have standing to pursue claims other than the ones that survived summary judgment. That comes from language that was in Judge Chuang's summary judgment and class certification ruling. That ruling is not before this court and the court doesn't need to decide the issue of standing, but I just want to say that Judge Chuang made an analytical mistake there. That is not a question of standing. The court had Article III standing, the appropriate standard for determining the scope of the claims that can be handled by a class representative is not standing and it's not a claim by claim determination. Instead, you just look to the Rule 26A factors, particularly commonality and typicality. This court made that exact point recently in the Mayor of Baltimore versus Hechtelian Pharmaceuticals case. I would just urge the court, in writing your opinion, to not inadvertently give an imprimatur to that particular part of Judge Chuang's analysis. Thank you. Thank you, Mr. Artico. Mr. Kemp? Yes, good afternoon, Your Honors. Eric Kemp for Nation Star Mortgage and may it please the court. I will also start with the release issue. I think the parties agree on the underlying legal standard, which is that it's okay for a release in a class action settlement to cover unalleged claims so long as they are based on the same underlying factual predicate. The question here is whether the release is overbroad because it covers claims that don't arise from the same factual predicate. We believe the answer to that question is no. The underlying case concerns various alleged flaws in processing loss mitigation applications, including failure to acknowledge receipt or decide them in a timely fashion or bias of appeal rights, failure or requesting depletive information, and failing to respond to complaints or inquiries. The release in this case is consistent with those allegations in that it applies only to claims that are related to loss mitigation applications and that were or could have been asserted in this action. And by tying the release with that language, the class release is appropriately limited to claims that arise out of the same factual predicate. I think it's very similar to the release language in the Deja Vu case from the Sixth Circuit. And that's exactly how the district court interpreted the release in this case, in the order which is that JA 835 finds that the release is narrowly tailored and limited to claims pled or that could have been pled based on the facts alleged in the complaint. Ms. McAdam's argument focuses heavily on one fact, whether a borrower's property was foreclosed and is effectively arguing that there's some sort of blanket rule that if there's a foreclosure, the claim can't be covered by the settlement. And that can't be correct. Whether a borrower's claim is barred by this settlement turns on the specific facts underlying the claim that she might pursue against NationStar, not whether or not there happened to be a foreclosure. So if the claim is based on the submission of a loss mitigation application and it arises from the same factual predicate, it is barred regardless of whether or not there's a foreclosure. But if it arises from a completely different factual predicate, for example, the borrower to say that I was never in default in the first place or NationStar didn't give me sufficient time before the foreclosure took place under state law, those sort of claims clearly aren't barred. And I think that the recent result in the McAdams case in the Southern District of California illustrates this point. We took the position that the claims did arise from the same factual predicate. Though Ms. McAdams has a dual tracking claim, in our view, that loan actually was not dual tracked. And so in that sense, it is very similar to the Robinson situation where you have the claim alleged, but we don't think there are facts that support it. The district court disagreed with that and found that the claim could proceed, that it didn't arise from the same factual predicate. And that's entirely consistent with what we've been arguing in our briefs, that it's for the McAdams court to determine the effect of the settlement on the claims asserted in that case. And any other class member, it's notable that there's only one substantive objection out of over 340,000 class members. But to the extent there's anyone else out there who would make the same argument as Ms. McAdams, her experience demonstrates there's a procedure for them to argue that their claims are in fact not covered by the release. Mr. Kent, can I ask, so the whole purpose of the class action though is to incentivize or at least allow for individual claims to be brought together as a class because otherwise the incentives aren't there to do so individually. And so I don't know that it's a good response to say, well, these class members can decide to litigate separately claims that they feel fall outside of the settlement agreement. I mean, that's the whole reason why you have a class action. Yes, Your Honor, and I think as Mr. Tico said, the court certainly has to review the language of the release in this case and ensure that it arises, that it's limited to claims asserted under the same factual predicate under the abuse of discretion standard. And I think that the magistrate did that in this case by expressly finding that the claims were or could have been asserted in the action. Releases are forward-looking in nature, and it's difficult to describe, particularly in a case like this with many different violations asserted. It's difficult to describe or anticipate every sort of permutation that might arise in a future case. So what we tried to do was to describe the core issue, the submission of a loss mitigation application, which is a defined term under the RESPA regulations, and limit it to claims based on that that were or could have been asserted in the action. I would also note that the release in this case is limited in temporal scope. It applies only to claims between January 2014 and September 2019. Practically speaking, to the extent there are issues about loss mitigation applications that any class members have, many of them have already likely been addressed by the courts or otherwise. I also wanted to briefly address Mr. Hauschen's comments about the district court's consideration of the GFE loop factors in approving the settlement as fair, reasonable, and adequate. The primary argument appears to be that the district court didn't go far enough in trying to estimate the amount of class members' individual claims or damage awards. But I think it's notable that this court has never held that that's required under GFE loop or any other case. Given the nature of the claims in this case, it would have been extraordinarily difficult for the district court to make that sort of calculation. For example, on our summary judgment motion, while it's true that the Robinsons claimed about $140,000 in damages, the district court found many of the types of damage they claimed unsubstantiated. One area where he found a lot of damage was postage costs incurred for the various communications back and forth with NationStar. That sort of damage is highly individual and is going to vary from borrower to borrower. So this is not like a wage and hour case where you can just tally up the hours or time that was uncompensated and do a simple equation and determine what each class member's recovery would be. It would be a highly individual inquiry where it's basically impossible to do what Mr. Houchen was asking for. So we don't think the district court abused its discretion in not doing a further analysis of the class claims on that issue. Unless there are further questions for me, I believe I'm prepared to submit. Thank you. Thank you, Mr. Kemp. Mr. Houchen, you've got some time for rebuttal. Thank you, Your Honor. Just going back to the scope of the release, this presents problems because there's really two issues, an issue of standing and an issue of adequacy of representation. The plaintiff Robinson never had standing to assert the dual tracking claims. And then there's a recent opinion in the Murawski versus Godiva Chocolatier case in the 11th Circuit. That court found that a class action settlement can't release the claim that the named plaintiff doesn't have standing to assert them. And that's essentially what happened here. I mean, the release language can be read to encompass dual tracking claims. Nation Star argued that the release would conclude Ms. McAdams' dual tracking claims. But I think this court really needs to look at the standing issue as to whether Mr. Robinson even had standing in the first place to assert those claims and release those claims, which we don't believe he did. The second issue is the issue of adequacy, whether Mr. Robinson was an adequate representative of the class. And as the court in the McAdams case in California found, that wasn't the case. He never had dual tracking claims. So he didn't prosecute those claims vigorously on behalf of the class. Well, Mr. Hauschen, let me ask you about that. So with respect to adequacy of representation, that's an issue that has come and gone by the time you get to the settlement, the question of the fairness hearing, isn't it? I don't believe so, Your Honor. I think under the amended Rule 23BQ, district courts are specifically supposed to look at whether the class representative and class counsel have adequately represented the class. And I think with respect to that rule, you have to look at what type of class claims are being released. And so adequacy came up earlier during the class certification ruling. But then the release under the settlement supports the release of claims that go outside the scope of the claims that the district court allowed to proceed. Let me take you back to this issue of standing because Mr. Tico mentioned this and I want to be sure I understand your position. So clearly Mr. Robinson had standing to assert claims. He may not have had he may not have been on all fours with every possible claim that each individual class representative might conceivably have. But that's not, I don't believe, the test for standing. Is it? I would agree with you, Your Honor, that he certainly had standing to assert some claims such as the claims that the district court allowed to proceed such as the delay in processing the loss mitigation application. But he didn't have standing to assert the dual tracking claims. I don't understand that. You either have standing or you don't. I mean, it's a separate question of whether or not he has so little in common with the class that he may not be an adequate representative. But once you get past the issue of whether he had standing to assert the claims, then we're into adequacy, which is a separate issue. Yes, I agree with that, Your Honor. I don't dispute that he had standing to assert some claims. It's just the dual tracking claims he could not assert because they were dismissed at the summary judgment stage. And so I think it goes into adequacy as well. He was not an adequate class representative as far as the dual tracking claims go. He couldn't assert those claims in the first place. Can I ask you a question that Mr. Kemp brought up in his argument about, and I think you raised this initially in your initial argument about calculating or estimating damages. It's true, I think you would agree, that our cases don't absolutely require that in each and every case, and that would frankly be impractical. So the question here is, is this one of these cases where it simply would have been difficult, if not well-nigh impossible to do? I think the parties were at least required to provide a rough estimate of what the actual damages were, and that's something that they didn't do in this case. I mean, Rule 23E2 asks the court to consider whether the settlement is adequate. You have to consider what the likelihood would be on a litigated judgment in order to make that adequacy inquiry. And I think that's really one of the jiffy loop factors, the solvency of the defendant and the likelihood of recovery on a litigated judgment. So I don't think that either the parties or the district court really gave a ballpark estimate of what the actual damages would be here, and I think that's required under the rule. I'd like to just address one issue that Judge Cullen raised earlier with respect to the magistrate judge presiding over the settlement proceedings. There was an issue of waiver as to whether Ms. McAdams waived that argument. I'd just like to point the court to the appendix of pages 792 through 795. Those are pages of the reporter's transcript from the final approval hearing. During the hearing, we did object to the magistrate judge proceeding, so we don't think that that argument is waived here. But as I understand that, Mr. Housens, that objection related to the 636 and Ms. McAdams not consenting to the magistrate judge's jurisdiction. That's the way I read that. Not that you are raising an issue with respect to potentially a conflict of interest, the appearance of a conflict of interest. Am I misreading that? Yes, Your Honor. I think we brought up the issue that the magistrate judge was also the judge who essentially mediated the case. So I think that was brought up during the fairness hearing. I think you're correct that it was 636, but I don't think we waived that argument, and it was brought up during the final approval hearing. Alright, and I just want to close the loop on this. It's 793 at the top. With all due respect, Ms. McAdams does not provide her consent to proceed before the magistrate or a magistrate. So I read that as Ms. McAdams is objecting to the magistrate judge presiding in 636. I don't read that, that the magistrate judge has some conflict and can't approve. But I understand your point. And I don't see a conflict argument anywhere in your opening brief. Yes, Your Honor. I think that was raised in the opening brief towards the last pages there where we argued whether the magistrate judge has jurisdiction. I see I'm going over my time. Jurisdiction, yes. I'm sorry, Your Honor. Yes, you did raise the jurisdiction issue. Yes, and I think we brought up the conflict issue. And like Judge Cullen said, there's really no set standard on that issue. The Coby Court and the Ninth Circuit left that as an open question, but we haven't been able to find any cases that really deal with whether there's a conflict of interest. All right. Thank you very much, Mr. Houchin. The case has been submitted. We appreciate your arguments and what is mentioned earlier typically come down from the bench to greet you personally, but obviously we cannot do that. But thank you all again for your arguments here this afternoon. We really appreciate it and hope to see you soon. Take care. I'd ask the court clerk to adjourn the court until tomorrow morning. Thank you, Your Honor.
judges: Albert Diaz, Stephanie D. Thacker, Thomas T. Cullen